JAMES SMITH, Appellant, *v.* PHILIP G. HUBERT and Another, Respondents.

*Set-off of an assigned claim for rent against a claim for board—construction of a contract.*

The plaintiff, in an action brought to recover an amount that the defendant agreed to pay for board furnished to him and to others at his request, was liable for rent which had accrued under a lease to a third person who had assigned her claim therefor to the defendant in the action prior to the commencement thereof.

*Held,* that the amounts due the respective parties could be set off respectively against each other, apart from the question whether there was an agreement that the plaintiff's claim should be applied on account of the rent due from the plaintiff.

In construing a contract in order to determine whether the word "proceeds" is to be construed the same as "net profits" or "receipts" or "gross receipts" resort must be had to the contract itself for the purpose of determining the meaning which the parties themselves intended should be given thereto.

APPEAL by the plaintiff, James Smith, from a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of New York on the 29th day of May, 1894, upon the verdict of a jury rendered by direction of the court after a trial at the New York Circuit.

*Albridge C. Smith*, for the appellant.

*Clifford W. Hartridge*, for the respondents.

O'BRIEN, J.:

On April 1, 1890, the defendant Hubert leased to one Eva Brumfield a hotel at Stamford, Conn., known as the Hamilton House, for three years from April 1, 1889, at the yearly rent of $2,200. The lessee also agreed to furnish board to the lessor, his family or friends, occupying the second floor of the Swiss cottage, at the rate of five dollars per week for each person. On May 6, 1890, Eva Brumfield, the above-named lessee, entered into an agreement with the plaintiff in terms as follows:

"This agreement, made this sixth day of May, 1890, between James Smith, of the city, county and State of New York, of the first part, and Eva Brumfield, of the same residence, of the second part:

"Witnesseth, that the said party of the first part agrees to devote his entire time and attention from the opening of the summer season until the close thereof, in running as a hotel the premises known as 'The Hamilton House and Cottage,' at Stamford, Conn.; that he will, prior to the opening thereof, fully and properly stock said house out of his own funds and keep the same invested during the entire season, and oversee and attend to the improvements and repairs to be made thereon, viz., the outside of said house and stable shall be painted, and a fireplace constructed in the hall of the main hotel, and such other necessary repairs and improvements as may be deemed advisable to make by the parties hereto, the same not to cost a sum exceeding five hundred dollars, which said improvements and repairs shall be paid for out of the gross proceeds arising from the business conducted at the said premises, and all of the said expenses shall be paid on or before the first day of August, 1890.

"And the party of the first part further agrees to furnish to the party of the second part a suitable room and board from the opening until the said house shall be closed; and the said party of the first part further agrees to pay out of the proceeds of said house the sum of two thousand two hundred dollars as rent therefor during said season, in three equal payments on the 1st and 15th of

July and the 30th day of August, 1890; and at the close of said season to pay to the said second party one-third of the net profits derived from such business; and the said second party shall have the right, at all proper times, to examine the books, accounts, etc., kept in such business, so that she may at all times be advised concerning the same.

"And the party of the first part further agrees that Messrs. Hubert and Frohman shall retain the entire second floor of the cottage above mentioned, and shall have board for the period of twelve weeks for four persons at the rate of five dollars per week for each person.

"And the party of the second part, for and in consideration of the covenants and agreements hereinbefore specified on the part of the party of the first part, agrees to and with said first party that she will permit him to have possession of said premises, and the control thereof for the purposes above mentioned, and will accept and receive the performance of the first party's covenants in full and complete payment for the same, and will by her influence in all manner aid in the success of the business so to be conducted.

"And, whereas, it is expected that certain lots and portions of said premises may be sold by the said second party during the continuation of this agreement, in case said sales are effected, the said second party agrees to pay to the said first party one-half of the net commissions made by her on such sale.

"It is further agreed that the party of the first part shall have the right to continue the terms and conditions of this agreement for a period covering the summer season of 1891 and 1892. He shall, however, make his election so to continue this contract on or before the first day of November, 1890.

"In witness whereof the said parties have hereunto set their hands and seals the day and year first above written.

"JAMES SMITH,<br>"EVA BRUMFIELD."

During the summer season Hubert and Frohman, and the latter's wife, child and maid, occupied the cottage and took their meals at the hotel. In addition a number of actors and actresses brought by

Frohman also boarded at the hotel, for whom it was alleged and decided that defendants were liable, so that at the end of the season the total account against the defendants was $807.50, to recover which the present action was brought.

The answer set up two defenses : *First,* that whatever plaintiff furnished to defendants and other persons at defendants' request should be applied on the rent due during the season of 1890 from Eva Brumfield to defendant Hubert, and that the rent accruing was more than enough to pay the indebtedness alleged in the complaint; *second,* that by virtue of the agreement between the plaintiff and Miss Brumfield, the former became responsible to pay the rent to the latter out of the proceeds, and that all her interest in that contract she has assigned to the defendants, and they counterclaimed the $2,200, the amount of the rent, against the plaintiff's claim and demand. The plaintiff's reply denied the agreement as to the set-off of board against rent, and also denied that there were any proceeds from the season's business applicable to rent.

At the close of the case the court directed a verdict for the difference between the $2,200, amount of rent due, and the plaintiff's claim.

There is no appeal from any order denying a motion for a new trial, but, upon the exception to the direction of a verdict, the legal question is presented as to whether or not the construction given by the court to the contract between the plaintiff and Miss Brumfield was correct, and if so, whether the defendants, by virtue of the assignment to them of Miss Brumfield's rights thereunder, are entitled to counterclaim against him, and obtain an affirmative judgment for the difference. We say these are the real questions upon this appeal, for though there was a controversy in regard to whether or not plaintiff's claim was to be applied on the rent due from Miss Brumfield to Mr. Hubert, there being upon this point a conflict of evidence, it would have been necessary, if this entered into a determination of the rights of the parties, to submit it as a question of fact to the jury. If, however, the plaintiff was liable to Miss Brumfield for the $2,200 rent, and she assigned her claim to the defendants prior to the commencement of the action, then, under well-settled principles of law, apart from the question whether plaintiff's claim was to be applied on the rent due from Miss Brumfield to

Mr. Hubert, the court was justified in directing a verdict for the defendants for the difference between the respective claims.

The plaintiff insists that he was entitled to go to the jury upon the question of whether or not the counterclaim had been assigned to the defendants before the bringing of this action; and he refers to the testimony of one of the defendants (Hubert) who at first testified that it was delivered "immediately after this suit was begun," but who subsequently modified this by saying he did not know whether the suit was begun or not when the assignment was made; and then when his attention was called to the date of the assignment, which was November 1, 1890, he stated positively that it was executed on that day. The summons in this action is dated December 18, 1890; and while Miss Brumfield said she did not know whether the suit was begun or not when the assignment was made, there is nothing in the record that contradicts or destroys the effect of the instrument itself, or the positive statement of Hubert that it was executed upon the day it bears date, which was concededly prior to the commencement of the suit.

Under the agreement the question is whether the plaintiff and Miss Brumfield were partners in the venture, or whether the plaintiff leased the Hamilton House from her. This consideration, together with the meaning of the word "proceeds," as used in that portion of the agreement providing that the rent was to be paid "out of the proceeds of said house," must determine its true construction.

A reference to the first clause might furnish an argument in favor of the contention that they entered into the enterprise as a joint venture, and being interested in its profits, might be regarded as partners; but the absence of any covenant upon the part of Miss Brumfield to share losses, together with the fact that all the covenants are affirmative ones on the part of the plaintiff, strengthens the construction which is enforced by the latter part of the agreement, that the arrangement was one by which, upon certain conditions, he obtained the lease of the premises from her. Thus it reads that she "will permit him to have possession of said premises and the control thereof for the purposes above mentioned, and will accept and receive the performance of the first party's covenants in full and complete payment for the same, and will, by her influence, in all manner aid in the success of the business so to be conducted."

Our construction of this agreement, therefore, is that it was a lease from Miss Brumfield to the plaintiff, and that the consideration therefor contains, among other things, an agreement on the part of the plaintiff that he will "pay out of the proceeds of said house the sum of two thousand two hundred dollars as rent therefor. * * *"

It appears that the receipts of the house — or the proceeds, if that word is used synonymously with receipts — were more than sufficient to pay the rent, although it likewise appears that there were no profits in the business, the expenses being more than the receipts. Upon this last is placed appellant's contention that he was not liable for the rent except in the event that there were profits out of which the rent would be payable. In determining the question whether the word "proceeds" is to be construed the same as "net profits," or as "receipts," or "gross receipts," resort must be had to the contract itself for the meaning which the parties themselves intended should be given thereto.

It will be noticed that in regard to the improvements and repairs that were to be made by the plaintiff, the provision is that they were to be paid for out of the "gross proceeds arising from the business conducted at the said premises;" and further, that at the close of said season the plaintiff was to pay to Miss Brumfield "one-third of the *net profits* derived from such business." If the rent was payable out of profits only, why were not apt words used? We think it was intended to use the word "proceeds," out of which the rent was to be paid, as equivalent to "receipts" or "gross proceeds;" and in this we are confirmed, not only by the fact that when net profits were intended those specific words were used, but also by the attitude of the parties with respect to the property itself. We are of opinion that the construction given by the court was the correct one; and it appearing that, by virtue of the assignment of such contract from Miss Brumfield to the defendants, by which they secured a claim against plaintiff for $2,200 before this action was brought, they were entitled to counterclaim this sum, and were entitled to judgment therefor, less the amount of plaintiff's claim.

The judgment accordingly should be affirmed, with costs.

VAN BRUNT, P. J., and PARKER, J., concurred.

Judgment affirmed, with costs.